BENJAMIN B. WAGNER
United States Attorney
GRANT B. RABENN
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 559-4000
Facsimile: (559) 559-4099

Attorneys for the
  United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  1:13-CR-00136 |
| Plaintiff, | MEMORANDUM OF PLEA AGREEMENT PURSUANT TO RULE 11(c) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |
| v. | |
| CHANROU YATH, | |
| Defendant. | Hon. Anthony W. Ishii |

Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, the United States of America, by and through Benjamin B. Wagner, the United States Attorney for the Eastern District of California, and Assistant United States Attorney Grant B. Rabenn, and Defendant, CHANROU YATH, and her attorney, Mark Coleman, have agreed as follows.

This document contains the complete Memorandum of Plea Agreement ("Plea Agreement") between the United States Attorney's Office for the Eastern District of California ("Government") and defendant CHANROU YATH regarding this case. This Plea Agreement is limited to the United States Attorney's

Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

    1.   <u>Charges.</u>

    The defendant acknowledges that she has been charged in a twenty-night (29) count indictment as follows:

    Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(C);

    Structuring conspiracy, in violation of Title 18, United States Code, Section 371;

    Causing or Attempting to Cause a Domestic Financial Institution to Fail to File a Currency Transaction Report, in violation of Title 31, Sections 5324(a)(1) and (d)(2); and

    Structuring, in violation of Title 31, United States Code, Sections 5324(a)(3) and (d)(2).

    2.   <u>Nature, Elements and Possible Defenses.</u>

    The defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney. Further, the defendant fully understands the nature and elements of the crimes in Count Two and Twenty-One of the indictment to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

COUNT TWO:

The elements of the crime of Structuring Conspiracy are:

First, beginning on a date no later than in or about October 2008, and continuing through in or about April 2013, there was an agreement between two or more persons to:

(a) to conduct financial transactions in a manner to cause or attempt to cause a domestic financial institution to wit: Wells Fargo, JP Morgan Chase, U.S. Bank, and Bank of America branches located in the State and Eastern District of California and elsewhere, to fail to file a report required under section 5313(a) of Title 31 of the United States Code, and any regulation prescribed under any such sections; and

(b) to structure or attempt to structure transactions with a domestic financial institution, to wit: Wells Fargo, JP Morgan Chase, U.S. Bank, and Bank of America branches located in the State and Eastern of California and elsewhere, for the purpose of preventing the financial institutions from filing a report required under section 5313(a) of Title 31 of the United States Code, and any regulations prescribed under any such section.

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

Third, at some time during the existence of the conspiracy, at least one of the members performed an overt act in order to further the objective of the conspiracy.

COUNT TWENTY-ONE:

The elements of the crime of Structuring are:

First, the defendant knowingly structured currency transactions for the purpose of evading the currency transaction reporting requirement; and

Second, the defendant conducted the currency transactions with one or more domestic financial institutions.

Three, the defendant conducted the currency transactions while violating another law of the United States as part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

3.   Agreements by the Defendant.

(a)   Defendant agrees that this plea agreement shall be filed with the court and become a part of the record of the case.

(b)   Defendant agrees to enter a plea of guilty to Count Two of the indictment, which charges her with Structuring Conspiracy, in violation of Title 31, United States Code, Section 371, and Count Twenty-One of the indictment, which charges her with Structuring, in violation of Title 31, United States Code, Section 5324(a)(3).

(c)   Defendant understands and agrees that she will not be allowed to withdraw her plea should the Court fail to follow the government's sentencing recommendations.

(d)   Defendant knowingly and voluntarily waives her Constitutional and statutory rights to appeal her plea, conviction, restitution imposed, forfeiture order, and sentence. This waiver of appeal includes, but is not limited to, an express waiver of defendant's right to appeal her plea, conviction, restitution imposed, forfeiture order, and sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742, and defendant further agrees not to contest her plea,

1   conviction, restitution imposed, forfeiture order, and sentence
2   in any post-conviction proceeding, including but not limited to
3   a proceeding under 28 U.S.C. § 2255.

4       (e)   Defendant further acknowledges that her plea of guilty
5   is voluntary and that no force, threats, promises or
6   representations have been made to anybody, nor agreement
7   reached, other than those set forth expressly in this agreement,
8   to induce the defendant to plead guilty.

9       (f)   Defendant agrees that her base level offense for
10  Structuring Conspiracy (Count Two) and Structuring (Count
11  Twenty-One) is six (6) pursuant to § 2S1.3(a)(2)of the USSG.
12  Further, Defendant agrees to an enhancement of at least fourteen
13  (14) levels for more than $400,000 in structured transactions
14  pursuant to §§ 2S1.3(a)(2) and 2B1.1(b)(1)(H); an enhancement of
15  two (2) levels for knowing that the funds were proceeds or
16  intended to promote an unlawful activity pursuant to
17  § 2S1.3(b)(1); and an enhancement of two (2) levels for
18  committing the offense as part of a pattern of unlawful activity
19  involving more than $100,000 in a 12-month period pursuant to
20  § 2S1.3(b)(2).

21      (g)   Defendant agrees not to move for any downward
22  adjustments in her offense level under either Chapters Two,
23  Three, Four or Five of the United States Sentencing Guidelines.
24  The defendant also agrees not to move for a downward variance of
25  her sentence under the factors set forth in 18 U.S.C. § 3553.
26  The defendant understands and agrees that this agreement by him
27  includes, without limitation, not moving for a downward
28  departure and/or variance of his offense level, criminal history

29  MEMORANDUM OF PLEA AGREEMENT                    5

category or criminal history points as defined by the Sentencing
Guidelines.  Additionally, the defendant agrees that the
application of the U.S. Sentencing Guidelines to his case
results in a reasonable sentence and that the defendant will not
request that the court apply the sentencing factors under
Section 3553 of Title 18, United States Code, to arrive at a
sentence different than that called for under the Sentencing
Guidelines.  The defendant acknowledges that, if the defendant
requests or suggests in any manner a different sentence than
what is called for under the Sentencing Guidelines, the
Government, at its sole discretion, may withdraw from this plea
agreement and continue with its prosecution of the defendant as
if the parties had not entered into this Plea Agreement.

(h)   Defendant understands that the Court must consult the
Federal Sentencing Guidelines (as promulgated by the Sentencing
Commission pursuant to the Sentencing Reform Act of 1984, 18
U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by
United States v. Booker and United States v. Fanfan, 543 U.S.
220 (2005)), and must take them into account when determining a
final sentence.  Defendant understands that the Court will
determine a non-binding and advisory guideline sentencing range
for this case pursuant to the Sentencing Guidelines.  Defendant
further understands that the Court will consider whether there
is a basis for departure from the guideline sentencing range
(either above or below the guideline sentencing range) because
there exists an aggravating or mitigating circumstance of a
kind, or to a degree, not adequately taken into consideration by
the Sentencing Commission in formulating the Guidelines.

Defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

(i)   Defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Agreement and any charges previously dismissed).

(j)   Defendant agrees to forfeit to the United States voluntarily and immediately all right, title, and interest to any and all assets seized pursuant to 21 U.S.C. §§ 853, 881(a), 881(a)(6); 28 U.S.C. § 2461; 31 U.S.C. §§ 5317, 5317(c)(1), 5317(c)(2); and Fed. R. Crim. P. 32.2(b)(1).

Those assets include, but are not limited to, the following:

1.   $147,900 in U.S. Currency seized from safe deposit box located at Bank of America branch in Modesto, California, held in the name of Say Eng and Sdey Chim.

2.   $7,500 in U.S. Currency seized from an U.S. Express Mail envelope en route from Lowell, Massachusetts to Modesto, California.

3.   Yugo 59/60 model semi-automatic firearm with serial number K423900, and ammunition located inside magazine;

4.   Norinco SKS model semi-automatic firearm with serial number 013018/DB013018;

5.  Savage Arms Mark 2 model semi-automatic firearm with serial number 0461075;

6.  Ruger 10-22 model semi-automatic firearm with serial number 24292833;

7.  Winchester 68-22 model firearm with unknown serial number;

8.  Norinco 90 model 12-gauge shotgun with serial number 0028157;

9.  Sterling Arms CASSI model grease gun style firearm with serial number 586960215SC2626;

10. Phoenix Arms HP22 model firearm with serial number 4173214;

11. Smith & Wesson Air-weight 38 special model firearm with serial number 27050, and ammunition located inside magazine;

12. Smith & Wesson Air-weight 38 special model firearm with serial number 27050, and ammunition located inside magazine;

13. Taurus PT 247 pRO model firearm with serial number NZA81494, and ammunition located inside magazine;

14. Gabilondo Llama 9mm firearm with serial number 212778;

15. Phoenix Arms HP22 model firearm with serial number 4097953, and ammunition located inside magazine;

16. Colt Automatic 22 model firearm with serial number 38829;

17. Ruger Mark 3 model firearm with serial number 22712865;

18. Springfield Armory xd 9 model firearm with serial number US862231, and ammunition located inside magazine;

19. Para Ordinance C7-45LDA model firearm with serial number CC1428, and ammunition located inside magazine;

20. Norinco 54-1 model firearm with serial number 5011651;

21. Smith & Wesson 38+P model firearm with serial number 5001502, and ammunition located inside magazine;

22.   Glock 22 model firearm with serial number GVN475, and ammunition located inside magazine;

23.   FNMI 49 model firearm with serial number 517MM10580;

24.   Mach 10 Cobray model upper part with unknown serial number;

25.   Glock 21 pistold with obliterated serial number; and

26.   Remington 870 shotgun with serial number D693276M.

27.   Apple Desktop SN QP0370SVDNP;

28.   Apple Desktop SN W89133646X1;

29.   Dell Tower 300 SN4HWHZ61;

30.   HP Laptop SN CND8511SGO; and

31.   Canon Printer SN GFX80G1.

The defendant also agrees to a personal forfeiture money judgment in an amount of $712,792.49 as the result of the underlying criminal scheme and the violations of 18 U.S.C. § 371; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, 853, 881(a), 881(a)(6); 28 U.S.C. § 2461; 31 U.S.C. §§ 5317, 5317(c)(1), 5317(c)(2), 5324(a)(1), 5324(a)(3), and 5324(d)(2).  As part of the imposition of the personal forfeiture money judgment, the Defendant agrees to provide this Office with signed waivers related to federal and state income tax returns, and a waiver of the Right to Financial Privacy Act, which includes, but is not limited to, any credit records, communication records, DMV records, educational records, employment records, military records, business records, and credit reports maintained by any consumer credit reporting entity, until such time as the money

judgment is satisfied.  In this regard, the Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information), whatever financial information disclosure form which may be required by an agency, as well as this Office's Right to Financial Privacy Act Waiver & Authorization to Release Information form.

Defendant agrees to fully assist the government in the forfeiture of any seized assets or assets later determined to be forfeitable and to take whatever steps are necessary to pass clear title to the United States.  Defendant shall not sell, transfer, convey, or otherwise dispose of any assets found to be connected to the criminal events charged in the Indictment.

Defendant agrees not to file a claim to any of the seized property in any criminal proceeding or civil proceeding, administrative or judicial, which is or may be initiated. Defendant agrees to waive right to notice of any forfeiture proceeding involving such property, and agrees to not file a claim or assist others in filing a claim in such a proceeding.

The Defendant waives the notice provisions of Fed. R. Crim. P. 7(c) and 32.2(a), waives oral pronouncement of forfeiture at the time of sentencing and any defects in such pronouncement that pertain to forfeiture, and waives any defenses to forfeiture, including any defense predicated on the Ex Post Facto, Double Jeopardy, and Excessive Fines Clauses of the United States Constitution.  The Defendant knowingly and voluntarily waives any right to jury trial in any criminal or civil forfeiture proceeding.

(1)   If the defendant's conviction on the count to which she is pleading is ever vacated at the defendant's request, or her sentence is ever reduced at her request, the government shall have the right to: (1) prosecute the defendant on any of the counts to which she pleaded guilty; (2) reinstate any counts that may be dismissed under this agreement; and (3) file any new charges that would otherwise be barred by this agreement.   The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.   By signing this agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision, including Double Jeopardy.   In particular, she agrees not to raise any objections based on the passage of time with respect to such counts including, without limitation, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

If it is determined that the defendant has violated any provision of this Agreement or if the defendant successfully moves to withdraw her plea: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after her Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United Sates Constitution, any statute, the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant

before or after this Agreement, or any leads derived therefrom, should be suppressed.  By signing this Agreement, the defendant waives any and all rights in the foregoing respects.

(m) Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a United States citizen. The defendant's plea to the violation herein may subject her to automatic deportation and removal from the United States.  <u>See</u> 8 U.S.C. § 1227(a)(1), <u>et seq</u>.  Defendant affirms that she has been advised of the immigration consequences of pleading guilty and wants to plead guilty regardless of any immigration consequences that may result from her plea, even if such consequence includes her automatic deportation and removal from the United States after completing any sentence of incarceration due to her plea.

4.   <u>Agreements by the Government.</u>

(a)  The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in Section 3E1.1 of the United States Sentencing Commission Guidelines Manual.

(b)  The government agrees that the defendant's base level offense for Structuring Conspiracy (Count Two) and Structuring (Count Twenty-One) is six (6) pursuant to § 2S1.3(a)(2)of the USSG.  Further, Defendant agrees to an enhancement of at least

1   fourteen (14) levels for at least $400,000 in structured
2   transactions pursuant to §§ 2S1.3(a)(2) and 2B1.1(b)(1)(H); an
3   enhancement of two (2) levels for knowing that the funds were
4   proceeds or intended to promote an unlawful activity pursuant to
5   § 2S1.3(b)(1); and an enhancement of two (2) levels for
6   committing the offense as part of a pattern of unlawful activity
7   involving more than $100,000 in a 12-month period pursuant to §
8   2S1.3(b)(2).

9        (c)   To the extent that such a recommendation is consistent
10  with the USSG and imposition of sentences under Title 18 of the
11  United States Code, the government will recommend that the
12  Defendant's sentences for Count Two run concurrently to Count
13  Twenty-Eight of the Indictment.

14       (d)   The defendant acknowledges and understands that the
15  government makes no other representations to her regarding
16  fines, whether any other specific offense characteristics apply
17  to her conduct under Chapter Two of the Guidelines, the
18  restitution owed, her criminal history or criminal history
19  points under Chapter Four or whether additional enhancements or
20  reductions under Chapter Three or Five of the United States
21  Sentencing Guidelines apply and defendant understands that the
22  government is free to comment and to make recommendations to the
23  court and the probation office regarding those matters.

24       (e)   The government agrees to dismiss counts one and counts
25  eight through fifteen as to this defendant at the time of
26  sentencing.
27  ///
28  ///

MEMORANDUM OF PLEA AGREEMENT            13

5.   Factual Basis.

Defendant will plead guilty because she is in fact guilty of the crimes set forth in Counts One, Two, and Twenty-One of the indictment.  Defendant also agrees that the following are the facts of this case, although she acknowledges that, as to other facts, the parties may disagree:

Dr. X was a pain management doctor operating in or around Visalia, Fresno and Modesto, California.  Dr. X was licensed to prescribe controlled substances, included oxycodone and hydrocodone.  Dr. X also issued purported medical marijuana recommendation cards to patients. CHANROU YATH and co-defendants Sarith Chim, Sdey Chim, Chanrath Yim Yath, Phally Thach, Raeb Chou, Say Eng, Iris Stephanie Garcia, Chantha A. Chim, and Loc Huu Chau were patients of Dr. X., obtained prescriptions for oxycodone and hydrocodone from Dr. X, and filled those prescriptions at pharmacies in or around Fresno and Modesto, California and elsewhere.  CHNAROU YATH and co-defendants Sarith Chim, Sdey Chim, Chanrath Yim Yath, Phally Thach, Raeb Chou, Say Eng, Iris Stephanie Garcia, Chantha A. Chim, and Loc Huu Chau also obtained medical marijuana recommendations from Dr. X.

In addition to obtaining their own prescriptions for oxycodone and hydrocodone, and medical marijuana recommendation cards, CHANROU YATH knew that co-defendants Sarith Chim, Chanrath Yath, Phally Thach, and Loc Huu Chau recruited other individuals or "recipients" to visit Dr. X for the purpose of obtaining prescriptions for oxycodone and hydrocodone, and medical marijuana recommendation cards.  CHANROU YATH was also aware that co-defendants Sarith Chim, Chanrath Yath, Phally Thach, and Loc Huu Chau promised to pay recipients in return for the prescriptions of oxycodone and hydrocodone, and the medical marijuana recommendation cards that the recipients would receive from Dr. X.

After recipients were given prescriptions for oxycodone and hydrocodone, and medical marijuana recommendation cards from Dr. X, co-defendant Sarith Chim and others collected the prescriptions and recommendation cards from recipients. Co-defendant Sarith Chim and others filled the oxycodone and hydrocodone prescriptions at pharmacies in or around Fresno and Modesto, California.  Further, defendant Sarith

Chim and others placed the medical marijuana recommendation cards on at least one marijuana grow site located in the State of California.

After obtaining the oxycodone and hydrocodone pills from pharmacies in or around Fresno and Modesto, California, CHANROU YATH  and co-defendants Sarith Chim, Sdey Chim, Chanrath Yim Yath, Phally Thach, Raeb Chou, Say Eng, Iris Stephanie Garcia, Chantha A. Chim, and Loc Huu Chau, and others transported and mailed the oxycodone and hydrocodone pills from the State of California to co-defendants David Ruem, Phary Chim, and Cindy Doeum and others in or around the State of Washington and elsewhere for the purpose of selling the oxycodone and hydrocodone pills to other individuals on the black market in the State of Washington and elsewhere.  As described below, co-defendants David Ruem, Phary Chim, and Cindy Doeum transferred the proceeds of the sale of oxycodone and hydrocodone by making cash deposits into bank accounts owned by co-defendants in the State of California.  To inform co-defendants of which bank accounts were receiving cash deposits, co-defendant David Ruem sent and received electronic text messages to co-defendant Sdey Chim and others.

From in or about October 2008 and continuing through in or about April 2013, in the State and Eastern District of California and elsewhere, defendant CHANROU YATH and co-conspirators Sarith Chim, David Ruem, Sdey Chim, Chanrath Yim Yath, Phally Thach, Raeb Chou, Say Eng, Iris Stephanie Garcia, Chantha A. Chim, Cindy Doeum, Phary David Chim, and Loc Huu Chau and others knowingly combined, conspired, and agreed among themselves to structure financial transactions for the purpose of preventing domestic financial institutions, including Wells Fargo, JP Morgan Chase, U.S. Bank, and Bank of America, from filing Currency Transactions Reports on those transactions, as required by section 5313(a) of Title 31, United States Code.

CHANROU YATH  and co-defendants Sarith Chim, Chanrath Yim Yath, Phally Thach, Raeb Chou, Say Eng, Iris Stephanie Garcia, Chantha A. Chim, and Loc Huu Chau opened and maintained bank accounts at Wells Fargo, JP Morgan Chase, U.S. Bank, and Bank of America.  Those accounts were opened for the purpose of receiving from co-defendants David Ruem, Phary David Chim, and Cindy Doeum cash deposits that were the proceeds of the distribution of oxycodone, hydrocodone, and marijuana.

Co-defendants David Ruem, Phary David Chim, and Cindy Doeum made or caused to be made the cash deposits into the accounts opened by above-described co-conspirators. CHANROU YATH and co-defendants Sarith Chim, David Ruem, Sdey Chim, Chanrath Yim Yath, Phally Thach, Raeb Chou, Say Eng, Iris Stephanie Garcia, Chantha A. Chim, Loc Huu Chau, Phary David Chim, and Cindy Doeum knew that the above-

described domestic financial institutions were required to file Currency Transaction Reports on any cash transactions greater than $10,000.

The deposits made by co-defendants David Ruem, Phary David Chim, and Cindy Doeum were made in amounts of $10,000 or less to prevent the above-described domestic financial institutions from filing Currency Transaction Reports on those cash deposits.  Co-defendants David Ruem, Phary David Chim, and Cindy Doeum did not want the above-referenced domestic financial institutions to file Currency Transaction Reports on those transactions because the cash deposited was the proceeds of the distribution of oxycodone, hydrocodone, and marijuana.  In total, co-defendants David Ruem, Phary David Chim, Cindy Doeum and others deposited more than $1.5 million in cash into the above-described bank accounts, which was then withdrawn in a structured manner from the bank accounts by CHANROU YATH and co-defendants Chanrath Yim Yath, Phally Thach, Raeb Chou, Say Eng, Iris Stephanie Garcia, Chantha A. Chim, and Loc Huu Chau.  Defendant CHANROU YATH made at least $712,792.49 in structured cash withdrawals from accounts held in her name with funds deposited by co-defendants David Ruem, Phary Chim, Cindy Doeum and others that was proceeds of the unlawful distribution of controlled substances.

In furtherance of the conspiracy, the defendant CHANROU YATH made, among others, the following cash transactions: a cash withdrawal on March 21, 2011 of $6,100 and $4,600 on the same day from Bank of America account number ending in 3349.

From in or about October 2008 and continuing through in or about April 2013, in the State and Eastern District of California and elsewhere, defendant CHANROU YATH knowingly and for the purpose of evading the reporting requirements of section 5313(a) of Title 31, United States Code, structured cash transactions to prevent Bank of America, a domestic financial institution, from filing Currency Transaction Reports on those transactions.

The defendant CHANROU YATH made, among others, the following financial transactions: cash withdrawal on November 2, 2011 of $6,500 from Bank of America account number ending in 3349 held in her name; cash withdrawal on November 4, 2011 of $6,000 from Bank of America account number ending in 3349 held in her name; cash withdrawal on November 22, 2011 of $8,000 from Bank of America account number ending in 3349 held in her name; cash withdrawal on November 25, 2011 of $4,000 from Bank of America account number ending in 3349 held in her name; cash withdrawal on November 30, 2011 of $7,000 from Bank of America account number ending in 3349 held in her name; cash withdrawal on December 2, 2011 of $8,000 from Bank of America account number ending in 3349 held in her name; cash withdrawal on

December 7, 2011 of $7,000 from Bank of America account number ending in 3349 held in her name; and cash withdrawal on December 8, 2011 of $7,000 from Bank of America account number ending in 3349 held in her name; cash withdrawal on December 14, 2011 of $8,000 from Bank of America account number ending in 3349 held in her name; cash withdrawal on December 16, 2011 of $6,500 from Bank of America account number ending in 3349 held in her name; cash withdrawal on December 21, 2011 of $8,000 from Bank of America account number ending in 3349 held in her name; cash withdrawal on December 22, 2011 of $8,000 from Bank of America account number ending in 3349 held in her name; cash withdrawal on December 28, 2011 of $8,000 from Bank of America account number ending in 3349 held in her name; and cash withdrawal on January 3, 2012 of $6,000 from Bank of America account number ending in 3349 held in her name.

The structured cash transactions conducted by defendant CHANROU YATH wer in an amount greater than $100,000 in a 12-month period that was part of a pattern of illegal activity.

6.   <u>Potential Sentence.</u>

The following is the maximum potential sentence which defendant faces <u>as to each count</u>:

Count Two:

(a)   Imprisonment.

Maximum:  5 years.

(b)   Fine.

Maximum: Two-Hundred and Fifty-Thousand Dollars ($250,000.00).

(c)   Both such fine and imprisonment.

(d)   Term of Supervised Release:

Maximum: Three years.

(Should the defendant violate any of the terms of her supervised release, he can be returned to prison for the period of supervised release actually imposed by the Court or two years, whichever is less.)

(e)   Penalty Assessment.

Mandatory: One Hundred dollars ($100.00).

MEMORANDUM OF PLEA AGREEMENT                17

Count Twenty-One:

(a)   Imprisonment.

Maximum:  10 years.

(b)   Fine.

Maximum: Five-Hundred Thousand Dollars ($500,000.00).

(c)   Both such fine and imprisonment.

(d)   Term of Supervised Release:

Maximum: Three years.

(Should the defendant violate any of the terms of her supervised release, he can be returned to prison for the period of supervised release actually imposed by the Court or two years, whichever is less.)

(e)   Penalty Assessment.

Mandatory: One Hundred dollars ($100.00).

7.   <u>Waiver of Rights.</u>

Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a)   If defendant persisted in a plea of not guilty to the charges against her, she would have the right to be represented by an attorney at all stages of the proceedings, and would have a right to a public and speedy trial.  The trial could be either a jury trial or a trial by a judge sitting without a jury. Defendant has a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

(b)   If the trial were a jury trial, the jury would be composed of twelve lay persons selected at random.  Defendant

1   and her attorney would have a say in who the jurors would be by
2   removing prospective jurors for cause where actual bias or other
3   disqualification is shown, or without cause by exercising
4   peremptory challenges.  The jury would have to agree unanimously
5   before it could return a verdict of either guilty or not guilty.
6   The jury would be instructed that defendant is presumed innocent
7   and that it could not convict her unless, after hearing all the
8   evidence, it was persuaded of her guilt beyond a reasonable
9   doubt.

10      (c)  If the trial were held before a judge without a jury,
11  the judge would find the facts and determine, after hearing all
12  the evidence, whether or not he was persuaded of the defendant's
13  guilt beyond a reasonable doubt.

14      (d)  At a trial, whether by a jury or a judge, the
15  government would be required to present its witnesses and other
16  evidence against defendant.  Defendant would be able to confront
17  those government witnesses and her attorney would be able to
18  cross-examine them.  In turn, defendant could present witnesses
19  and other evidence on her own behalf.  If the witnesses for
20  defendant would not appear voluntarily, he could require their
21  attendance through the subpoena power of the Court. At trial,
22  the defendant would also have the right to assistance of legal
23  counsel.  If he could not afford legal counsel, one would be
24  appointed for her by the court at no expense to her.

25      (e)  At a trial, defendant would have a privilege against
26  self-incrimination so that he could decline to testify, and no
27  inference of guilt could be drawn from this refusal to testify.

28      Defendant understands that by pleading guilty he is waiving

all of the rights set forth above and defendant's attorney has explained those rights to her and the consequences of her waiver of those rights.

8.   Questions by Court.

Defendant understands that if the court questions her under oath, on the record and in the presence of counsel, about the offense to which he has pleaded guilty, her answers, if false, may later be used against her in a prosecution for perjury.

9.   Entire Agreement.

This plea of guilty is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement.   There have been no representations or promises from anyone as to what sentence this Court will impose.

10.   Court not a Party.

It is understood by the parties that the sentencing court is neither a party to nor bound by this agreement and the sentencing judge is free to impose the maximum penalties as set forth in paragraph 6.   Further, in making its sentencing decision, the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the indictment.

11.   Presentence Report.

Defendant understands that the United States Probation Office is not a party to this agreement and will conduct an independent investigation of defendant's activities and her

background.   It will then prepare a presentence report which it will submit to the Court as its independent sentencing recommendation.   In addition, the government will fully apprise the Probation Office, as well as the Court, of the full and true nature, scope and extent of the defendant's criminal activities, including information on her background and criminal history.

Dated: 7/23/2014

BENJAMIN B. WAGNER
United States Attorney

By:

GRANT B. RABENN
Assistant U.S. Attorney

Dated: 07/22/2014

CHANROU YATH
DEFENDANT

Dated: 07/22/2014

MARK COLEMAN
ATTORNEY FOR DEFENDANT

MEMORANDUM OF PLEA AGREEMENT                21